### In re Timothy P. MILLER

[718 A.2d 422]

No. 96-586

June 11, 1998. Following an adverse decision on his appeal, petitioner moves to disqualify the five justices that decided his case and to vacate the decision. We deny the motion as untimely.

On March 23, 1993, a jury found defendant guilty of second-degree murder. Subsequently, defendant moved for postconviction relief due to ineffective assistance of counsel. The superior court de-

nied the petition, and this Court affirmed by decision issued March 5, 1998. On March 19, 1998, petitioner moved to disqualify all five justices from further participation in this case and to vacate the March 5 decision. Defense counsel argues that, following the March 5 decision, petitioner informed him that the Attorney General's Office has represented the State in this case since 1983. Upon further research, defense counsel discovered that Chief Justice Amestoy represented the State as Attorney General on appeal from the denial of the motion for a new trial, see *State v. Miller*, 151 Vt. 337, 560 A.2d 376 (1989), and Justices Johnson and Skoglund were Assistant Attorneys General during the time that petitioner's case was prosecuted by that office. He argues that, on that basis, all three justices should be disqualified and that Justices Dooley and Morse should be disqualified because, having participated with the other three justices, they have been tainted.

Petitioner brings this motion under V.R.A.P. 31(e)(1), which provides that a motion for disqualification of a justice shall be filed at or before the time to file the briefs. The rule further provides that the motion may be filed after the brief if (1) the motion is based upon grounds not known before filing the brief; and (2) the motion is filed soon after the grounds for disqualification are known. V.R.A.P. 31(e)(1). Defense counsel claims he did not know that the Office of the Attorney General prosecuted petitioner's criminal case until petitioner so informed him after the March 5 decision by this Court. We do not reach the merits of petitioner's V.R.A.P. 31(e)(1) claim[*] because we conclude that this is an untimely post-judgment motion to disqualify the judges.

The overwhelming weight of authority concludes that a motion to disqualify a judge should not be entertained where the litigant knew of the grounds for disqualification but waits until after receiving an adverse decision before filing the motion. See, e.g., *E. & J. Gallo Winery v Gallo Cattle Co.*, 967 F.2d 1280, 1295 (9th Cir. 1992) (holding motion for disqualification of trial judge filed with motion for new trial was untimely where litigant knew when judge was assigned case that judge had been partner in firm representing opposing party); *Katzman v. Victoria's Secret Catalogue*, 939 F. Supp. 274, 278 (S.D.N.Y. 1996) (denying post-judgment motion for disqualification as simply attempt to get "second bite at the apple"); *Kemp v. City of Grand Forks*, 523 N.W.2d 406, 408 (N.D. 1994) (rules of judicial disqualification are not tactical devices to be used after the judge has ruled against the litigant); *Myers v. Garson*, 614 N.E.2d 742, 745 (Ohio 1993) (not persuaded that decision of appeals court was tainted where appellant raised no objection to judge until after receiving adverse decision).

We agree that, generally, a motion for disqualification filed after judgment should be denied absent good cause for the tardiness. To hold otherwise would encourage litigants to delay in filing a motion for disqualification until the merits have been decided, and if the decision is unfavorable, then move for disqualification in an attempt to obtain a favorable decision. See *E. & J. Gallo Winery*, 967 F.2d at 1295 (allowing motions to disqualify judge after judgment would encourage parties to wait for a decision, and then if necessary move for disqualification "to get a second bite at the apple"); *Apple v. Jewish Hospital & Medical Cen-*

---

[*] A violation of V.R.A.P. 31(e)(1) may not be sufficient to deny the motion for disqualification. See *Ball v. Melsur Corp.*, 161 Vt. 35, 41, 633 A.2d 705, 711 (1993) (violation of V.R.C.P. 40(e)(1) — timeliness requirement to disqualify trial judge — is

not reason to deny motion; rather, attorney sanctions are prescribed).

*ter*, 829 F.2d 326, 334 (2d Cir. 1987) ("movant may not hold back and wait, hedging its bets against the eventual outcome"). Imposing this requirement of timeliness also discourages judge shopping and prevents waste of judicial resources. See *Apple*, 829 F.2d at 334; *In re Anwiler*, 958 F.2d 925, 930 (9th Cir. 1992).

The issue in this case is whether the motion to disqualify is untimely where the litigant did not know the basis for disqualification until after this Court's decision issued, but that information was generally available prior to filing the brief. Most courts have denied motions to disqualify filed after judgment where the litigant knew or should have known the basis for disqualification in time to file a timely motion. See, e.g., *United States v. Bauer*, 19 F.3d 409, 414 (8th Cir. 1994) (rejecting defendant's argument that he had good cause for filing untimely motion to disqualify sentencing judge in that he had out-of-state counsel who did not know that judge had previously served as United States Attorney while defendant had been investigated); *Harris v. State*, 414 S.E.2d 919, 924 (Ga. Ct. App. 1992) (motion to disqualify was untimely where litigant had access to information establishing that trial judge had previously prosecuted him while serving as district attorney prior to trial, but failed to move for disqualification until filing motion for new trial); *Kemp*, 523 N.W.2d at 408 (motion to disqualify trial judge first made on appeal was untimely where trial judge's prior employment should have been known to litigant when case was assigned to trial judge); *Myers*, 614 N.E.2d at 745 (appellant could have contacted appellate court after waiving oral argument to discover judge was on panel, rather than waiting for adverse decision before moving for judge's disqualification); *Sherman v. State*, 905 P.2d.355, 378 n.15 (Wash. 1995) (party must use due diligence in discovering possible grounds for recusal and then act promptly in seeking recusal).

Requiring litigants to use due diligence to discover grounds for judicial disqualification prior to submitting the case to the Court serves the important purposes of (1) preventing motions to disqualify from being used as tactical devices, cf. Code of Judicial Conduct, A.O. 10, Preamble [4] ("purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage"), and (2) preventing waste of judicial resources. The rules of disqualification "are designed to maintain public confidence in the impartiality of the judiciary and prevent the appearance of impropriety, not to provide parties with a tactical device to be used only after a judge has ruled against them." *Kemp*, 523 N.W.2d at 408. Based on the weight of authority and the policies underlying those decisions, we hold that a motion to disqualify a judge is untimely if filed after the decision is rendered unless the litigant shows good cause why the basis for the motion could not have been discovered sooner. See *United States v Brinkworth*, 68 F.3d 633, 639 (2d Cir. 1995) ("crux" of timeliness test is "whether defendant had good cause for delay"); *United States v. Studley*, 783 F.2d 934, 939 (9th Cir. 1986) (motion for recusal filed five weeks after trial is presumptively untimely absent showing of good cause).

Here, petitioner asserts that the Chief Justice was Attorney General when the Office of Attorney General represented the State in petitioner's appeal from denial of this motion for a new trial, and that Justices Johnson and Skoglund had worked at the Office of the Attorney General during part of the time that office represented the State in petitioner's appellate claims. All of this information was available to petitioner when he filed his brief. He has failed to show good cause for failing to file this motion in a timely manner; thus, the motion to disqualify is denied as untimely. It would be unfair to allow a party to wait to see if there is a

favorable outcome, and if not, then move for disqualification based on information available before the decision issued. See *Langle v. Kurkul*, No. 82-254 (Vt. Feb. 23, 1986) (mem.).

Because the motion to disqualify Chief Justice Amestoy and Justices Johnson and Skoglund is untimely, we need not address petitioner's claim that Justices Dooley and Morse should be disqualified for having sat on a panel with three disqualified justices. Nonetheless, we not that we have found no authority to support a motion to disqualify a panel of justices for participating in a decision with a justice who is subsequently disqualified. Even where a justice is disqualified on the basis of a personal pecuniary interest in the outcome of the case, rising to the level of a due process violation, recusal of the entire panel has not been required. See *Johnson v. Sturdivant*, 758 S.W.2d 415, 416 (Ark. 1988) (relying on *Aetna Life Ins. Co. v. Lavoie*, 475 U.S. 813 (1986), to conclude that state supreme court panel was not required to recuse itself for participating in a decision with a justice subsequently disqualified).

*The motion to disqualify the undersigned justices and to vacate our March 5, 1998 decision is denied.*

Motion for reconsideration denied June 26, 1998.